We're going to go on to Case No. 5, and that is Appeal 17-2389, Peggy Berg v. SSA. Hi. I'm just waiting until your friend is settled. Okay. Okay. Mr. Hanson. Good morning. I believe it still is, Your Honors, and may it please the Court. It is. Before the Court today is a question of law based on a small set of undisputed facts. Here, Mrs. Berg had a debt to the Social Security Administration, which may strike you as a bit peculiar. How is it that someone has a debt to the Social Security Administration when usually they receive benefits from that organization? And that's because, in this case, the Social Security Administration overpaid Mrs. Berg in the past. Mrs. Berg gave notice that she had obtained a job and thus was no longer entitled to benefits. The Social Security Administration issues payments by electronic payment in at least a lot, if not most cases, and that makes it possible for this sort of thing to occur. So Mrs. Berg says, listen, I have other employment, and the Social Security Administration continues to pay those amounts. That occurs for some time. Then what happens is Mrs. Berg obtains, essentially, an agreement to repay that amount, a certain amount per month, but then runs into hard times again, petitions for bankruptcy. So it's an interesting juxtaposition between those two areas of law. The second point of background that I want to make sure is clear is, here we have a debtor asserting a Bankruptcy Code Section 553 right under 522. The reason why that's important is 553 generally refers to creditors making sure that they don't unfairly if you want to put it that way, take an offset, and that presumably would be problematic for other creditors. That's not true in the Section 522 case. 522 allows the debtor in many circumstances, including this one, to assert a right that the trustee would otherwise be able to have. Mrs. Berg is asserting that right because the purpose of that right is to give her that money. I mean, it's fairly straightforward, but it distinguishes itself from other cases when Section 553 is just about creditors versus other creditors, and that's not true here because Mrs. Berg is and was receiving Social Security benefits, so she's looking to receive these benefits for herself. Our argument comes down to two core things. First, well, I'm sorry, first the issue. The issue is what really happened? When did the Social Security Administration take a set off in this case? Now, the facts are pretty straightforward. Mrs. Berg applied for benefits. Then the Social Security Administration awarded benefits after a statutorily required, mandatory waiting time of about six, I think it's five or six months. It's after five months, and then it's paid in arrears. That decision was made in a letter. It's pretty clear. It's July 30th, 2014. And in that letter it said, you're getting these benefits. You had this past debt to me. We're going to take that as a set off and give you the balance. It was about $900 or so. The question is whether they can do that. Can the Social Security Administration take that set off? Section 553 of the Bankruptcy Code says you can't improve your position within 90 days, and that letter was issued within 90 days of the bankruptcy filing. So how is it that we have a different position? What's the Social Security Administration's position in this case? My reading of it is, and I think they would be able to say it themselves when it's their turn, but my reading of it is there's six months, yes, and you have to wait until the end of that six months until you get any of those benefits, yes. However, in some sense, we can go back and calculate it. We can go back and calculate how much, in some sense, you got in the first month, second, third, fourth, fifth, sixth. And therefore, we can cut it in half. It's not the fact that the letter occurred within 90 days. We can say when you, in some hypothetical, would have been entitled to those benefits. Just in case you're unaware, Social Security Administration benefits are paid monthly. That's why the monthly is there. But that's antithetical to the statute. That view, the Social Security Administration's view, is antithetical to the statute and how offset decisions are actually made. Clear in this case is a letter in which they took the offset. There's no other time at which an offset could have been taken. Look at it this way. If you're sitting in Mrs. Berg's position, or even an independent third-party position, on July 29th, 2014, Social Security Administration hasn't awarded any benefits, no back benefits, no forward benefits. They haven't acted on the application at all. One of the statutory requirements that the Social Security Administration has is to only award payments and only to take an offset based on equity and good conscience. So the Social Security Administration has a decision to make, should it do this or not. They decided to do that in a letter, July 30th, 2014. The bankruptcy filing was, I believe, the very next month, certainly within 90 days. Looking at the issue another way, when did Mrs. Berg's right to the Social Security Administration benefits, when did those accrue? When did she actually get those? Well, the statute is pretty clear.  At that time, you need to wait at least five or six months. And the Social Security Administration actually has to do something. But just looking at the statute, you have to wait that period of time. I'm sure the Social Security Administration saves a good deal of money not having to pay claims for people who pass away during that time, for people who are no longer disabled at the expiration of that. If you're only disabled for three months, you're not entitled to benefits. That's a good policy. But that means, in this case, that the accrual occurred – I'm sorry, the benefits weren't due until the statute said they were due. And this is on top of the fact that you have to wait until the Social Security Administration actually decides to take an offset in the first place. In the case of – excuse me, in the case here, both of those things happened at the same time. The Social Security Administration's letter both awarded the benefits. Here, you're entitled to just about $20,000 with back benefits. And we're going to take the offset. So there might be an interesting different case when those happen in different times or the like. But here, it's very clear, and the letter gives us that clarity. If there are no questions, I'll reserve the balance of my time for rebuttal. Thank you. Hello, Ms. Benson. Yes, still good morning, Your Honors. Yeah. May it please the Court, I'm Julie Benz, representing the Social Security Administration in this matter. There are two things that are particularly important. First, the issue is not when SSA took the offset. The key issue first is the extent to which the comprehensive scheme of the Social Security Act, which is the governing non-bankruptcy law in this case, controls the application of the Bankruptcy Code's 90-day preference rule, 11 U.S.C. 523B. The code does not prevent offsets during the 90-day period. The issue is whether SSA improved its position in the 90 days between May 9th and August 7th when Ms. Berg applied for bankruptcy. The other point is that the Social Security Act governs the fact of the overpayment, the fact that SSA concluded that it could not waive recovery of the overpayment. It establishes SSA's duty to recover the overpayment. It establishes the date of disability, the termination of benefits, and, as Mr. Hansen pointed out, the waiting period and when entitlement to benefits begin to accrue. There is one thing that I would like to point out. Mr. Hansen said that SSA can only take an offset based on equity and good conscience. That is wrong as a matter of law. The Social Security Act, Section 404, states that whenever SSA discovers that there is an overpayment, then the agency shall recover by withholding benefits, any benefits to which the person may be entitled. The person may then ask the agency to waive the benefit, and the agency could only agree to waive if the person is not at fault, it would not defeat the purpose of the act, and it is against equity and good conscience. That does not apply in this case. The offset is mandatory. In this instance, the Bankruptcy Code itself recognizes that a claim does not come into existence when it is paid out. It is a very broad definition that a claim means a right to payment, whether or not it is reduced to judgment, even if it is unliquidated, contingent, or disputed. In this instance, the Social Security Act establishes when the claim arose, not when it was paid, but when it arose that a person who has worked long enough and paid taxes into the system shall be entitled to a disability insurance benefit for each month beginning with the first month after the waiting period. So in this instance, SSA determined that Ms. Berg became disabled for a second time in November of 2012. Her five-month waiting period was over after April, which means her first month of entitlement to benefits was May of 2013. She has to survive to the end of the month to be entitled to benefits, so her right to benefit, as the July letter showed, and SSA's right to offset with the existing overpayment both arose at the end of May of 2013. Her benefits accrued at a monthly basis from 2013. The debt overpayment similarly continued, reduced by payments that Berg made, until SSA determined that she was disabled. Again, an entitlement to benefits beginning in May of 2013. Can you help me with this? Is there any indication in the record why the trustee did not pursue this amount to distribute accreditors? I mean, I'm assuming the trustee calculated it as being $2,015 rather than the $19,400 that Ms. Berg intends, and that the smaller amount simply was not worth the effort of recovering? To be honest, Your Honor, I am not aware of anything that is in the record of the proceedings before the bankruptcy court that indicates why the trustee decided not to pursue it. It could be that Ms. Berg did not actually list SSA as a creditor. She listed the $19,400 overpayment as a potential income that was exempt under the code, so she never actually listed it as a debt. In the reply brief, Berg argued that there are cases under contract law or tax law provide an appropriate analogy to this case, but then, again, that ignores the fact that the bankruptcy code, Section 533, does not create set-off rights. It preserves the existing set-off rights under applicable non-bankruptcy law, which in this case, again, is the comprehensive scheme of the Social Security Act. If the relationship between the debtor and creditor is contractual, then it makes sense to apply contract law. But, in fact, the Supreme Court decided in 1960, in the case of Fleming v. United States, which is 363 U.S. 603, that entitlement to Social Security benefits is not contractual. Similarly, if the case involved an overpayment or tax liability, then the governing non-bankruptcy law would be the Internal Revenue Code. And also, in fact, the cases that Berg cites support SSA's position, because they establish that the issue is not when the claim is paid, in terms of calculating an insufficiency, but when the claim accrues. The case of Scott v. Majors was a real estate transaction. And the question was whether a person could offset attorney fees against the purchase price. The court ruled that the right to attorney fees accrued two years before the bankruptcy, even though the amount of the fees and the offset wasn't actually taken until after the debtor was discharged. The same with the cases of In re Roselle and In re Pleasant, which are both tax cases, which rule that even though the person claimed their refund after they'd actually filed for bankruptcy, it was a prepetition because you look back to the Internal Revenue Code says the claim arose and the right to offset similarly arose on December 31st of the previous year. So in this case, Berg applied for benefits in March 2014. SSA applied compassionate, a quick decision process, made its determination by July. Again, determined disability, which gave right to benefits and at the same time the right to offset arising at the end of May 2013. The bankruptcy court in this instance correctly recognized that with the monthly accrual of benefits, again adjusted by, as the statute requires, by cost of living increases, subtracted by Berg's payments, that as of the beginning of May of 2013, that SSA at that time, sorry that- 2014? Yes, well no, that in May of 2013, SSA owed Berg nothing and Berg owed SSA $19,885. Similar, by June of 2013, the bankruptcy court concluded SSA owed Berg $1,440. She owed them $19,785. At the beginning of May, with the accrual of benefits, SSA owed Berg $17,385 and she owed SSA $19,400. The insufficiency at that time was $2,015. By the time SSA sent out the letter and took the offset, the insufficiency was zero and so the bankruptcy court concluded then that SSA took a valid set off and the difference, the improvement of position was not $19,400 as Berg claims, but $2,015. Right, the two dates that matter are 90 days before the petition, what's the value of the insufficiency then, or the amount of the insufficiency then? Yes. And what the amount of the insufficiency on the date that the offset is taken. Yes, but also- Because what we're measuring is whether the claimant improved its position during the pre-petition period. Yes, but you look not only at, so you look then at what SSA owed Berg and what Berg owed SSA. And SSA's, Berg's right to benefits, right to payment, and SSA's corresponding right to offset date back to May of 2013. So her benefits accumulated, continued to accrue. The bankruptcy court correctly recognized that under the broad definition of claim in the bankruptcy code, that her application for benefits and entitlement, because she had worked long enough at a job that paid into Social Security, created a contingent, unliquidated claim dating back to the first month in which she became entitled to benefits. And SSA's corresponding right of set off arose at the same time, and that's how they calculated the insufficiency. So again, it is our position that it is the Social Security Act and the contingent claims that governs the right of recovery in this case. Thank you very much. Thank you very much. I'd like to just touch on a handful of things briefly to make sure that it's clear. There was some discussion about the year. The facts are succinctly stated in the appendix, pages 7 and 8, but we're talking roughly about March to July of 2014. So there were some statements, even a typo in the brief that says 2013. We're all in one year. Thank you for clearing this. It's not a year in 90 days. It's just the 90 days. Regarding insufficiency, Judge Sykes, you hit it right on the head, I believe. The debt or the amount due from Berg to the SSA began at $19,400, and by the time she filed her bankruptcy petition, it was reduced to zero because the SSA was giving her money at that point. So that's all we need to know about the insufficiency issue. It's just whether or not Berg's entitlement to benefits occurred via that letter or whether we should kind of be looking backwards. Should we ignore the statute that says it accrues after five months? Should we ignore the statement that you need to survive until the end of the month that counsel just made? To answer the question about the trustee, the trustee probably didn't pursue this case because you're the trustee for the creditors, and if you're not going to get something for the creditors, if you're only going after property that came in from Social Security benefits, that's not going to be able to go. The arguments regarding tax and statute of limitations cases, those are arguing by analogy. I could see that they're not directly on point, but I think that they help give some flesh to this point. And it's addressed in our brief, but it is true that Berg became entitled to, in some sense, an unliquidated contingent claim, if you want to put it that way, but still the statute is very clear that you have to survive until the end. So that's the only time in which you're actually entitled to those benefits. Okay. Thank you both. Thank you very, very much, and the case will be taken under advisement.